Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY JOYCE BRYANT,<br><br>         Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>         Defendant. | Civil Action No. 19-17311 (FLW)<br><br>OPINION |

**WOLFSON, CHIEF DISTRICT JUDGE**

  Before the Court is Plaintiff Kimberly Joyce Bryant's ("Plaintiff" or "Ms. Bryant") appeal of Administrative Law Judge ("ALJ") Douglass Alvarado's (the "ALJ") decision denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits based on the ALJ 's determination that Plaintiff was not disabled under the Social Security Act (the "Act"), 42 U.S.C. §§ 1381 *et. seq.* (ECF No. 1, Compl.). The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g), and decides this matter without oral argument pursuant to Local Civil Rule 9.1(f). For the reasons set forth herein, the Commissioner of Social Security's (the "Commissioner") decision is AFFIRMED.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

  At the time of her application for DIB and SSI, Plaintiff was 38 years of age.[1] (D.E. No. 6,

---

[1] Plaintiff's date of birth is December 20, 1977. (R. 78). Plaintiff is considered to be a "younger person" since she was under the age of 50 years old. *See* 20 CFR 404.1563(c).

Administrative Record ("R.") 21). Plaintiff has a high school education and can communicate in English. (R. 21). Plaintiff was previously employed as an administrative clerk, administrative assistant, and an inventory clerk. (R. 21; R. 75).

On January 25, 2016, Plaintiff applied for DIB, beginning on April 28, 2015, and ending on December 31, 2018, due to brain aneurism, ruptured brain aneurism, short term memory loss, and headaches. (R. 65; 93). On January 27, 2016, Plaintiff submitted a second application, for SSI benefits. (R. 12). Plaintiff's applications were denied initially and on reconsideration. (R. 12; 89; 117). Shortly thereafter, Plaintiff requested a hearing before an ALJ, which was conducted on July 27, 2018. (R. 12; 29-64). At the hearing, Plaintiff also claimed that she had been diagnosed with depression and anxiety. (R. 48, 53). On November 9, 2018, the ALJ issued a decision denying Plaintiff's application, finding that Plaintiff was not disabled under the Act. (R. 12-23). Plaintiff appealed. (R. 295-98). On July 10, 2019, the Appeals Council denied Plaintiff's request for review; thus, the ALJ's decision is the final agency decision for the purposes of the instant appeal. (R. 1-6).

## II. MEDICAL HISTORY

### A. Treating Physicians

Plaintiff was hospitalized from April 28, 2015 to May 26, 2015, for a ruptured brain aneurysm. (R. 217; 400-14). She underwent surgery to repair and clip the aneurysm on April 29, 2015. (R. 379). Plaintiff was referred to outpatient physical therapy program for gait difficulty and muscle weakness. *Id.* A function test was performed in July 2015, and Plaintiff was found to have normal functional limits. (R. 380). At the time of discharge, Plaintiff's status was noted to have improved with rehabilitation therapy and she was assessed to have an "excellent prognosis" with all established goals having been met. (R. 380-81).

Between July 2015 through December 2017, Neurosurgeon, Dr. James Chimenti, M.D., monitored Plaintiff's post-surgery progress through various follow-up visits. (R. 395-516). In July 2015, Plaintiff was cleared to drive, but had issues with stamina, headaches, and experienced an inability to sleep at night. (R. 409-10). A brain wave test was performed on Plaintiff in October 2015, the results of which were in the normal range. (R. 396). Plaintiff's subsequent 2015 evaluations reflect steady improvement, and her family even stated that Plaintiff's personality had returned to normal. (R. 408). However, Plaintiff continued to complain about her inability to sleep, headaches, and short-term memory difficulty into 2016. (R. 511-13).

In October 2016, Plaintiff visited Neurologist, Dr. Dipak Pandya, M.D., for the treatment of Plaintiff's continued headaches. (R. 459-62). Plaintiff was assessed with cognitive deficit as an effect of the cerebral aneurysm, migraines, insomnia, and mild cognitive impairment with memory loss. (R.E. 461). During follow-up visits with Dr. Pandya, on December 14, 2016 and March 16, 2017, Plaintiff experienced improvements in her symptoms including normal motor examination, normal gait, normal concentration, and normal memory abilities. (R. 463-70). These findings were static through June of 2017. (R. 471-75).

In July 2017, Plaintiff sought treatment from Dr. Lilian Zorrilla, M.D., for thyroids and was assessed with thyroid enlargement, mixed connective tissue disease, and obesity. (R. 446). Plaintiff again was seen by Dr. Zorrilla on September 25, 2017, during which Plaintiff underwent a physical examination, which resulted in testing negative for depression and Plaintiff denying experiencing moments where she felt little interest or pleasure in doing things, feeling down, depressed, or hopeless. (R. 448-49).

In October 2017, Plaintiff again saw Dr. Pandya and reported having less headaches. (R. 477). She was found to have decreased reflexes, but normal motor skills. (R. 477-79). In a final

February 2018 visit, Plaintiff still asserted having some headaches, but they continued to be less often than in prior years. (R. 482). Dr. Pandya concluded that Plaintiff's neurological examination was normal, and that Plaintiff was overall stable. *Id.*

Plaintiff continued to visit Dr. Chimenti for follow-up visits in connection with Plaintiff's post-surgery recovery. Plaintiff noticed improvement with decreased severity and amount of headaches experienced once the Topamax medication she was prescribed was adjusted. (R. 514-15). Also, Plaintiff increased the amount of work she was performing at the daycare she was running. *Id.* Plaintiff confirmed attending an aneurysm support group regularly and Plaintiff's energy levels were noted to be "quite well." (R. 515). During Plaintiff's last visit with Dr. Chimenti, he noted that Plaintiff had been discharged from cognitive therapy, that she has learned coping mechanisms, and that she has become comfortable with handling her daily activities. (R. 516).

Plaintiff visited Dr. Zorrilla, again, on April 25, 2018. (R. 451-53). Plaintiff was noted to appear alert and oriented, comfortable, and well nourished. (R. 452). During the visit, Plaintiff expressed depressive feelings- having little interest or pleasure in doings things; feeling down, depressed and hopeless, overeating; trouble concentrating while performing tasks like reading the newspaper or watching tv but denied experiencing suicidal or homicidal thoughts. (R. 451). Plaintiff was assessed to have moderately severe depression. *Id.* She was referred to psychiatry for her depression and to physical therapy for her bilateral back pain, which was present on both the left and right sides. *Id.*

Plaintiff visited Dr. Zorilla a final time on May 11, 2018, asserting neck spasms during a span of five days. (R. 453-55). Plaintiff showed signs of muscle tenderness and had limited rotation of her neck to the right; and she was assessed with having a neck muscle strain. (R. 453).

On June 5, 2018, Plaintiff visited the Universal Behavioral Health Center ("UBHC") seeking treatment for her depression. (R. 563-66). Plaintiff complained of feelings of sadness, anxiety, and worry about the future; limited memory; and decreased motivation. (R. 563). Although Plaintiff was noted to be attentive and communicative, with logical thinking, she was diagnosed with major depressive disorder, anxiety disorder, and was given medication for depression and insomnia. (R. 565). Plaintiff returned to the UBHC on July 26, 2018, and she expressed she had been getting adequate sleep and had better appetite since the prior visit; she also expressed that her depressive state was present but only moderate. *Id.* During the visit, Plaintiff showed no signs of hyperactive or attentional difficulties. (R. 567-68). Nonetheless, Plaintiff's depressive disorder and anxiety disorder were still noted to be present. *Id.*

**B. Consultative Evaluations**

On April 18, 2016, Plaintiff met with Psychologist, Dr. Esha Khoshnu, for a mental status examination. (R. 417). On the day of the evaluation, Plaintiff complained of back pain, arthritis, neck pain, and weight loss; an inability to lift things; headaches; poor memory; and an inability to sleep at night. (R. 416). Dr. Khoshnu found that Plaintiff's psychomotor activity was limited, and that Plaintiff has a mood disorder secondary to medical neurological condition; slowed speech; attitude was within normal limits; denial of paranoia, hallucination, impulsivity, suicidal and homicidal thoughts; and that Plaintiff's thought process was relevant. (R. 417).

On April 21, 2016, Plaintiff visited Neurologist, Rashel Potashnik, M.D., for a consultative evaluation. (R. 419-24). Dr. Potashnik reported that Plaintiff did not use an assistive devise and appeared to have a normal gait with a normal mental status. (R. 419). Cranial nerve exam was normal. *Id.* However, Plaintiff's cerebral testing, revealed mild left-hand clumsiness. *Id.* Plaintiff's height was 5'6" and her weigh was 232 pounds. *Id.* Plaintiff gave corrected answered when asked

a series of questions, but had trouble with serial 7's. *Id.* Plaintiff was able to walk on heels and tiptoes, to squat, but had difficulty with walking. (R. 420). Plaintiff showed mild left-sided weakness in comparison to Plaintiff's right-side capabilities. *Id.* Overall, Dr. Potashnik concluded that Plaintiff had some cognitive deficit and mild left-sided hemiparesis. *Id.*

### C. State Agency Physician Opinions

On April 28, 2016, Dr. Arvind Chopra, M.D., reviewed the initial medical evidence of record, including Plaintiff's brain aneurysm, surgery, improvement resulting from physical therapy, and complaints of headaches. (R. 71-72). Dr. Chopra noted that Plaintiff was moderately limited in her ability to: understand and remember; maintain attention and concentration for an extended period of time; complete a normal workday and workweek without interruptions from psychologically based symptoms; get along with coworkers or peers without distracting them; respond to changes in the work setting; and set realistic goals or to make plans independently with others. (R. 85-86). Plaintiff was also able to maintain sustained concentration and persistence. (R. 73). Dr. Chopra concluded that although Plaintiff has exertional limitations, she can perform light work. (R. 71-73). Four months later, in August of 2016, Dr. James Paolino, M.D., reviewed the updated record, at the reconsideration level, and affirmed Dr. Chopra's opinion. (R. 99-100).

On May 9, 2016, Psychologist, Dr. Jocelyn Fierstien, reviewed the initial record evidence as outlined above, and opined that Plaintiff may need some reminders or repetitions; had slowed speech; was able to follow conversation at a normal capability; was able to count and handle money; and was able to perform light cleaning tasks. (R. 75). Ultimately, Dr. Fierstien concluded that Plaintiff can perform basic tasks, and is able to adapt to light simple work. (R. 73-76; 88). On September 9, 2016, Psychologist, Dr. Sharon Flaherty, reviewed the updated record, at the reconsideration level, and affirmed Dr. Fierstien's opinion. (R. 101-03).

## III. LEGAL STANDARD

### A. Standard of Review

The Court reviews legal questions *de novo* and all other findings by the ALJ for "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

Courts are bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006). Thus, the district court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Determining Entitlement to Social Security Benefits

To qualify for DIB, the claimant must establish that she is "disabled." 42 U.S.C. § 1381. A claimant is disabled only if her physical or mental impairments are "of such severity that [she] is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

7

economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is defined by the Act as an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Under the Act, "a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [the individual] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.3d 34, 38–39 (3d Cir.2001) (internal citations and quotations omitted).

In analyzing whether a disability exists under the Act, a five-step sequential evaluation process is followed. *See* 20 C.F.R. § 416.920. First, the plaintiff must demonstrate that she has not engaged in any substantial gainful activity since the onset date of her severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 404.1572(a) & 416.972(a), (b). If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the plaintiff demonstrates that she has not engaged in substantial gainful activity, the analysis proceeds to step two.

Second, the plaintiff must demonstrate that her medically determinable impairment or the combination of her impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). An impairment or combination of impairments does not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See*

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

Third, the ALJ must assess the medical evidence and determine whether the plaintiff's severe impairment(s) (alone or in combination) meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four. However, before reaching step four, the ALJ must first determine a plaintiff's residual functional capacity ("RFC"). A plaintiff's RFC is the most that a plaintiff can do despite her limitations; all relevant evidence is considered. 20 C.F.R. § 416.945(a). At step four, the ALJ determines whether the plaintiff's RFC permits her to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work she had done in the past, the analysis proceeds to step five.

In the fifth and final step, the burden shifts to the Commissioner to produce evidence that there is a significant amount of other work in the national economy that the plaintiff can perform based on her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

## IV. DISCUSSION

### A. The ALJ's Decision

At step one, the ALJ noted that at Landmark Healthcare Facilities in 2015, Plaintiff held employment after the alleged onset date, and that she was self-employed providing childcare services between 2016 and 2017. (R. 15). Nonetheless, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. *Id.* At step two, the ALJ concluded that Plaintiff had the following severe impairments: brain aneurism, mixed connective tissue disease, migraine

9

headaches, obesity, cognitive impairment, depression and anxiety disorder. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the impairments listed in Appendix 1 of the applicable regulations. (R. 15-16).

Specifically, the ALJ evaluated Plaintiff's impairments under Listings 11.04, 14.09, 12.02, and 12.04. (R. 15-16). The ALJ found that there is no evidence in the record to support a finding that Plaintiff's impairments meet, or rise to the level of, the conditions set forth in Listing 11.04 nor Listing 14.09. (R. 15). As to Plaintiff's mental impairments in connection with Listings 12.02 and 12.04, the ALJ determined that the criteria in Paragraph B are not met. (R. 15-16). Specifically, the ALJ noted that Plaintiff has only a moderate limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*

The ALJ next determined that Plaintiff has the RFC to perform sedentary work except for the following limitations:

> Plaintiff must be able to stand and stretch at the workstation after one hour of sitting; able to sit for 1-5 minutes at the workstation after one hour of standing; and able to sit for 1-5 minutes at the workstation after 30 minutes of walking. She can frequently handle and finger with the left hand. She can occasionally climb ramps and stairs; can never climb ladders, ropes and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. She can never be exposed to unprotected heights, hazardous moving mechanical parts or operate a motor vehicle. The claimant is able to understand, remember and carry out simple instructions with only occasional changes to essential job functions; and is able to make simple work-related decisions. She can occasionally interact with supervisors, coworkers and the public; and is able to work in an environment where productivity is judged at the end of the day rather than the middle of the day.

(R. 16-17). The ALJ ultimately concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 18). At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work. (R. 21).

At step five, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, based on the record and having accepted the testimony of the vocational expert. (R. 21). Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's past work history and functional limitations could work as an optical goods assembler, final assembler, and document preparer, which only require an unskilled sedentary level of performance. (R. 62). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 22-23).

### B. Issues on Appeal

Plaintiff argues there is no substantial evidence to support the ALJ's RFC determination, and that the ALJ erred at step five, on the ground that the hypothetical questions posed to the vocational expert fail to account for all of the Plaintiff's impairments. (Pl. Mov. Br. 7-9). Defendant counters that the ALJ's determination should be upheld, because the ALJ's decision adequately reflects proper consideration of the record evidence, and that such evidence supports the ALJ's ultimate finding that Plaintiff is not disabled under the Act. (Def. Opp. Br. 11-25). The Court addresses Plaintiff's arguments below.

### i. The ALJ's RFC Determination and Evaluation of Relevant Evidence

A plaintiff's RFC sets forth the most that a plaintiff can do despite his limitations. 20 C.F.R. § 416.945(a). When making an RFC determination, an ALJ is required to consider all evidence. *Burnett*, 220 F.3d at 121. However, an ALJ need not rehash or discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004), so long as "the

ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions. *Jones*, 364 F.3d at 505.

Here, the ALJ determined that Plaintiff had the RFC to perform "sedentary work" with certain exceptions. *See, supra*. Plaintiff first argues that the ALJ failed to consider Plaintiff's own testimony, certain medical reports, and her mother's third-party functional report. (Pl. Mov. Br. 7). The Court disagrees.

As a preliminary matter, in making her argument, Plaintiff only generally highlights documents allegedly overlooked by the ALJ. (Pl. Mov. Br. 7). Plaintiff also fails to cite to specific evidence that contradicts the ALJ's findings or show that the ALJ's RFC determination is somehow erroneous. Thus, Plaintiff has failed to meet her burden in affirmatively pointing to record evidence that was ignored/overlooked by the ALJ that could change the result. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x at 814; *see also Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (requiring Plaintiff to "affirmatively point[] to specific evidence that demonstrates [s]he should succeed" rather than merely making generalized arguments in support of remand.).

Furthermore, the Court, having reviewed the record, finds that there is substantial evidence to support the ALJ's RFC findings. In reaching his conclusion, the ALJ specifically reasoned that Plaintiff's function report provides that Plaintiff does not sleep well at night; she lacks stamina to prepare meals; although she is able to shop and pay bills, her mother checks to ensure her bills are paid without error; she has trouble processing information; focusing for an extended period of time; and that she is limited in her ability to lift, squat, bend, stand, reach, walk, sit, climb stairs, see, remember, concentrate, and understand. (R. 17).

The ALJ also highlights a third-party function report completed by Plaintiff's mother, Ian Bryant, noting that Plaintiff's lack of sleep makes her fatigued; Plaintiff's personal care takes longer such that Plaintiff needs assistance sometimes; and Plaintiff is now less active than she was before Plaintiff's impairments began. (R. 17-18). The ALJ further highlights the inescapable fact that Plaintiff's mother is "not a disinterested witness," nor a trained medical professional, and thus, "her observations have been strongly considered but are only accorded limited weight." (R. 20). The ALJ also considered Plaintiff's testimony, explaining that Plaintiff testified that she is unable to multi-task; struggles with memory issues; has physical pain which necessitates breaks; is unable to walk for long periods of time and cannot lift much; and that she began treatment for her depression in 2018. (R. 18). Taken together, contrary to Plaintiff's position, the ALJ did in fact consider Plaintiff's function report, her mother's report, as well as Plaintiff's own testimony, in reaching his RFC determination. (R. 17-18).

Moreover, the ALJ found that although Plaintiff complained of physical limitations and changes in her ability to function normally, after being referred to physical therapy, in 2015, she made sufficient progress to be cleared to drive. (R. 18). Reports from 2015 and 2016 reflect that although Plaintiff complained of fatigue, Plaintiff's family noted that Plaintiff was functioning well and that her personality was back to normal; a CT scan showed no evidence of acute hemorrhage and that her progress although slow, was steady. *Id.* In addition, an April 2016 consultative neurological exam, performed by Dr. Potashnik, showed Plaintiff was obese, but that she had a normal gait and did not use assistive devices. (R. 19). The neurological exam also noted that Plaintiff was able to squat and walk on her heels and tiptoes. *Id.* The motor system exam showed normal tone and range of motion with only mild left-side weakness. *Id.* This record evidence is consistent with the ALJ's finding that "although the record confirms that she suffers

from physical and psychological impairments with resulting limitations in functioning, the evidence fails to demonstrate that she is precluded from all work activity." (R. 18). Thus, the Court finds that Plaintiff's arguments, in this context, are without merit.

In addition, Plaintiff contends that the ALJ failed to account for Plaintiff's mental/psychiatric impairments and that such "mental impairments *may* have had an impact on plaintiff's ability to perform the requirements of the occupations identified." (Pl. Mov. Br. 7) (emphasis added). The Court notes that by merely arguing that her mental impairments "***may*** have had an impact on [her] ability to perform the requirements [of sedentary work]," Plaintiff did not specifically point to evidence in the record that was overlooked and how such additional review would have made a difference. This deficiency, alone, demonstrates that Plaintiff has failed to meet her burden. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x at 814; *see also Woodson v. Comm'r Soc. Sec.*, 661 F. App'x at 766.

Nevertheless, even on the merits, Plaintiff's argument fails. In reaching the RFC determination, the ALJ noted that Plaintiff suffers from depression and anxiety, citing numerous reports spanning from 2016 through 2018. (R. 19-21). The ALJ observed that in 2018, Plaintiff was treated at UBHC and that her "associations were intact, thinking was logical and thought content appeared appropriate. Her intellectual functioning was estimated to be above average range. Signs of anxiety were noted but there were no signs of hyperactive or attention difficulties." (R. 20). Based on the record, the ALJ concluded that Plaintiff's functionality is limited to sedentary work and added further limitations to specifically account for Plaintiff's mental impairments. *See* (R. 20-21) (The ALJ concluding that Plaintiff is "limited to unskilled work with modest socialization and productivity requirements due to her depression, anxiety disorder and mild cognitive impairments secondary to her brain aneurism."). Contrary to Plaintiff's argument, the

14

ALJ did in fact consider Plaintiff's mental impairments in his analysis of Plaintiff's RFC.

Next, Plaintiff argues that the ALJ erred by affording little weight to the reports of the treating physicians and assigning greater weight to the DDS (state) consultants.[23] (Pl. Mov. Br. 7). The Court disagrees.

In addition to the objective medical evidence, the ALJ also considered several medical opinions and explained the weight he accorded to each. (R. 20-21); *see Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.") (citing *Burnett*, 220 F.3d at 121).

In giving greater weight to the opinions of DDS psychological Doctors Fierstien and Dr. Flaherty, the ALJ notes the following:

> Dr. Fierstien opined on May 9, 2016, that the claimant had moderate limitations in understanding and memory, sustaining concentration and persistence, and in social interaction and adaptation. However, Dr. Fierstien noted that she was able to perform basic tasks, sustain basic concentration, persistence and pace, relate, and adapt to simple

---

[2] The ALJ's decision actually accorded little weight to the opinions of State physicians, Drs. Chopra and Paolino, because they did not examine Plaintiff nor review evidence submitted after their evaluations. (R. 20). Specifically, Dr. Chopra and Dr. Paolino opined that Plaintiff could perform the full range of light work, but in reviewing the evidence the ALJ concluded that:

> the opinions are inconsistent with the clinical evidence of record, which shows that the claimant's severe physical impairments, in combination, prelude the exertional demands of light work and fail to include the necessary manipulation, postural and environmental limitations set forth [in the decision].

(R. 20). However, great weight was given to the mental limitations noted by DDS doctors Fierstien and Flaherty. Thus, the Court focuses on these reports in evaluating Plaintiff's challenge.

[3] Plaintiff makes an argument regarding the ALJ's failure to consider the vocational expert's testimony in connection with whether there is work available for Plaintiff to perform. (Pl. Mov. Br. 7). The Court addresses this argument *infra*, as this is a challenge to the ALJ's step five analysis.

15

> work []. Dr. Flaherty agreed with this mental residual functional capacity on reconsideration of September 2, 2016 []. While non-examining sources, the State agency consultants have program knowledge of the Administration's standards and procedures. Further, their opinions are supported with explanations and are generally consistent both internally and with the substantial evidence of record.

(R. 20-21). The above finding is consistent with a subsequent psychiatric evaluation performed in June 2018, at the UBHC by Olayinka Aramide, PMHNP-BC, which revealed that Plaintiff was attentive and communicative and that her thinking and intellectual functioning was above average. (R. 565).

Indeed, the ALJ did not commit any error by placing greater weight on the opinions of the DDS psychological doctors, because such medical diagnoses were supported by explanations and were consistent with the overall record evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (observing that opinions of treating physicians are given controlling weight only when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]"). More importantly, Plaintiff, again, fails to point to any evidence from the treating physicians to which the ALJ may have failed to give adequate weight, and Plaintiff fails to show how giving such unidentified evidence more weight would have changed the outcome of the ALJ's RFC determination. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x at 814; *see also Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016). Accordingly, the Court rejects Plaintiff's argument.

In light of the above, the Court finds that, contrary to Plaintiff's arguments, the ALJ sufficiently explained why objective evidence belies Plaintiff's subjective complaints, and also adequately explained the weight he accorded each piece of opinion evidence. The ALJ's RFC determination was supported by substantial evidence in the record as whole. *Jones*, 364 F.3d at

505. Plaintiff has failed to meet her burden in pointing to evidence that was overlooked by the ALJ that would change the outcome of his decision, and thus, the ALJ's RFC determination remains undisturbed.

### ii. The ALJ's Step Five Determination

Plaintiff first argues that the ALJ erred by failing to consider the vocational expert's testimony "that there would be no work available if Plaintiff was absent more than 2 days per month, or off task more than 15% of the work day." (Pl. Mov. Br. 8); *see also* (R. 56-63).

During the July 27, 2018 hearing, the ALJ posed five hypothetical questions to the vocational expert that required the expert to consider whether there would be work in the national economy, according to the Dictionary of Occupational Titles, for an individual with similar past work history and functional limitations as those held by Plaintiff. (R. 56-64). With each new question posed to the vocational expert, the ALJ altered the hypothetical to ensure that any potential functional limitation of Plaintiff would be considered by the vocational expert. *Id.*

For example, the ALJ asked the vocational expert, if the hypothetical individual "was able to lift, carry, push and pull ten pounds occasionally and less than ten pounds frequently, could sit for six hours, could stand and walk for two hours, would there be work for that individual?" (R. 62). The vocational expert specified that such limitations would require a sedentary exertional level, which includes employment as an optical goods assembler, final assembler, and document assembler. *Id.* (R. 22). The ALJ's step five findings that there is work available for Plaintiff in the national economy was appropriately based on the ALJ's RFC finding that Plaintiff can perform sedentary work with various limitations, including the need for standing, sitting, and stretching at the workstation. (R. 16-17).

The ALJ also posed additional questions that fell outside of Plaintiff's RFC, asking whether

there would be work for a hypothetical individual that would be absent from work two or more days per month. (R. 62-63). In response, the vocational expert stated that such absences are beyond an acceptable threshold. *Id.* The ALJ also asked if the hypothetical individual was off task 15% or more of the workday, whether there would be work for that individual, to which the vocational expert again responded that there would not be. (R. 63). To be clear, the ALJ's RFC determination limits Plaintiff to sedentary work and does not set forth any additional limitation requiring 2 or more days absent from work a month, nor any restriction requiring Plaintiff to be 15% or more off task during the workday. Rather, the RFC contemplates Plaintiff to be able to stand and stretch at the workstation and to sit for 1-5 minutes at the workstation, and it accounts for Plaintiff's other limitations. Thus, because Plaintiff erroneously uses one of the hypothetical questions raised by the ALJ as if that hypothetical was applicable to her RFC, the Court rejects Plaintiff's argument in this regard.

Next, Plaintiff argues that the ALJ failed to "convey in [his] hypothetical questions all of the claimant's impairments that were supported by the record." (Pl. Mov. Br. 8). Plaintiff specifically points to the ALJ's failure to include "the plaintiff's ability to maintain concentration, persistence or pace" and Plaintiff's "conditions and symptoms related to the hypothetical questions posed to the vocational expert." *Id.*

In reaching his conclusion, the ALJ dedicates a paragraph to evaluating Plaintiff's impairments with regard to concentrating, persisting, or maintaining pace, and he found that Plaintiff has a moderate limitation. (R. 16). The ALJ further highlights the fact that Plaintiff reported that she is assisted by her mother with finances to ensure Plaintiff does not make any mistakes while paying bills, as well as her need for reminders regarding medical appointments, and her limited concentration and ability to complete tasks. *Id.* The Court finds that the ALJ

accounted for such limitation in Plaintiff's RFC by concluding that Plaintiff is only able to "understand, remember and carry out *simple instructions* with *only occasional changes* to essential job functions; and is able to make *simple* work-related decisions." (R. 16-17) (emphasis added).

Thus, as highlighted by Defendant, Plaintiff's argument is a repackaging of her objections to the ALJ's RFC determination. *See* (Def. Opp. Br. 21-24). The Court has, however, already determined that the ALJ's RFC findings are supported by substantial evidence, and thus, it was proper to pose hypotheticals to the vocational expert based on that RFC when considering the types of employment positions that can be held by Plaintiff. Further, as I noted above, the ALJ accounted for Plaintiff's mental limitations by limiting Plaintiff's RFC "to unskilled work with modest socialization and productivity requirements due to her depression, anxiety disorder and mild cognitive impairments secondary to her brain aneurism." (R. 20-21). Accordingly, the Court rejects Plaintiff's argument and upholds the ALJ's step five determination.

## V. CONCLUSION

For the foregoing reasons, the Court affirms the decision of the Commissioner of Social Security. An appropriate Order accompanies this Opinion.

Dated: May 3, 2021

/s/ Freda L. Wolfson
**HONORABLE FREDA L. WOLFSON**
**UNITED STATES CHIEF DISTRICT JUDGE**